Filed 11/18/22  Cal. Water Curtailment Cases CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA WATER CURTAILMENT CASES. | H047927<br>(Santa Clara County<br> Super. Ct. No. 1-15-CV285182;<br>JCCP No. 4838) |

These appeals primarily concern the availability of Code of Civil Procedure section[1] 1021.5 attorney fees to appellants, a group of irrigation districts[2] (the Districts), which prevailed in mandate actions against respondent State Water Resources Control

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

[2] Appellants are Byron-Bethany Irrigation District (BBID), Central Delta Water Agency (CDWA), South Delta Water Agency (SDWA), San Joaquin Tributaries Authority (SJTA), Oakdale Irrigation District, and South San Joaquin Irrigation District. CDWA and SDWA have filed joint briefs on appeal, and we refer to them together as CDWA/SDWA.  Since SJTA, Oakdale Irrigation District, and South San Joaquin Irrigation District brought a joint motion for fees and have filed joint briefs on appeal, we refer to them collectively as SJTA.  BBID and West Side Irrigation District (WSID), which had been a party to this appeal, consolidated into a single entity called BBID after the trial court's order.  We subsequently granted BBID's request to substitute itself for WSID.  We refer to the two entities separately only where necessary.

Board (the Board).[3]  In the underlying litigation, the trial court issued writs of mandate finding that the Board had unlawfully issued water diversion curtailment notices to the Districts without jurisdiction and without according the Districts due process.

In a postjudgment order that is the subject of these appeals, the trial court denied the Districts' section 1021.5 motions seeking attorney fees they incurred in the court litigation leading to the writs of mandate on the ground that they had failed to show that their financial burden in bearing those fees exceeded their pecuniary interest in the litigation.  The trial court also denied the Districts' motions for attorney fees they had incurred during administrative enforcement proceedings before the Board, finding those proceedings were not useful and necessary to the Districts' court victory.  The trial court partially granted the Board's motions to tax costs and taxed the expenses that the Districts had incurred in the administrative enforcement proceedings.

Across their three appeals, the Districts challenge all of these rulings.  All of the Districts challenge the trial court's rulings on attorney fees.  They contend the trial court erred under section 1021.5 in denying them attorney fees because they demonstrated that the financial burden of the fees they incurred in the court litigation exceeded any pecuniary interest they had in the court litigation.  The Districts also maintain that they were entitled to attorney fees arising out of the administrative enforcement proceedings because they were useful and necessary to their court victory.  In addition, BBID and SDWA/CDWA challenge the trial court's ruling on costs.  They assert that the trial court

---

[3] The Board was joined by intervenors State Water Contractors and Department of Water Resources.  We refer to them collectively as the Board except where it is necessary to distinguish between them.  The Districts make no separate contentions concerning intervenors, who also moved to strike or tax costs.  The trial court found that it would not be "fair or appropriate to allocate any costs to the intervenors, whose participation in the case was limited and whose involvement did not cause petitioners' costs to increase."  The Districts do not challenge this ruling on appeal.

2

erred under sections 1032 and 1095 and contend they were entitled to recover the costs taxed by the trial court.

As explained further below, we agree that the trial court erred under section 1021.5 in denying the Districts attorney fees for the court litigation. We affirm the trial court's ruling that the Districts were not entitled to their attorney fees for the administrative proceedings. We also affirm the trial court's ruling on costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Curtailment Notice Mandate Actions and Administrative Enforcement Proceeding

On April 23, 2015, the Board sent out curtailment notices to a group of water right holders after it "determined that the existing water supply in the San Joaquin River watershed is insufficient to meet the needs of all water rights holders." (See generally *California Water Curtailment Cases* (2022) 83 Cal.App.5th 164.) These notices told "all holders of post-1914 appropriative water rights within the San Joaquin River watershed . . . to immediately stop diverting under their post-1914 water rights." The notices also "advised that, if you continue to divert under a claim of pre-1914 right, most or all pre-1914 rights in the San Joaquin River watershed are likely to be curtailed later this year due to the extreme dry conditions." On May 1, 2015, the Board sent nearly identical notices to water right holders within the Sacramento River watershed.

In June 2015, the Board sent curtailment notices to water right holders, including the Districts, with "pre-1914 claims of right, with a priority date of 1903 and later for the Sacramento-San Joaquin watersheds and the Delta" telling them "that, due to ongoing drought conditions, there is insufficient water in the system to service their claims of right." The notices told the recipients "to immediately stop diverting water . . . until water conditions improve." (Underlining omitted.)

The June 2015 notices expressly stated, under the heading "Potential Enforcement": "If the State Water Board finds following an adjudicative proceeding that

3

a person or entity has diverted or used water [] unlawfully, the State Water Board may assess penalties of $1,000 per day of violation and $2,500 for each acre-foot diverted or used in excess of a valid water right. (See Water Code, §§ 1052, 1055.) Additionally, if the State Water Board issues a Cease and Desist Order against an unauthorized diversion, violation of any such order can result in a fine of $10,000 per day. (See Water Code, §§ 1831, 1845.)" In all, the Board's 2015 curtailments applied to "9,218 water rights."

The Districts filed court mandate actions challenging the curtailment notices on due process and jurisdictional grounds.[4] The Districts asserted that the Board had violated their due process rights by issuing the curtailment notices without providing them with a predeprivation hearing. They also contended that the Board had exceeded its jurisdiction in curtailing their water rights because it lacked the authority to regulate pre-1914 appropriative water rights. BBID, WSID, and SJTA also asserted takings causes of action against the Board.

BBID's petition alleged: "A curtailment of BBID's pre-1914 appropriative water right will result in the loss of more than $65 million in crops." The petition filed by WSID, CDWA, and SDWA alleged that if they continued diverting in defiance of the Board's curtailment notice for one month, they would incur over $12 million in penalties.[5] SJTA, whose constituent districts cover a territory exceeding 72,000 acres, alleged in its petition that a single 200-acre farm would incur a penalty of over $1.5 million in 20 days if it defied the curtailment notice. WSID, CDWA, and SDWA sought a temporary restraining order and a preliminary injunction against the Board barring the curtailments. WSID asserted that injunctive relief was necessary because curtailment of water would result in approximately $25 million in crop losses within WSID's district.

_____

[4] These three actions and two others were filed in four different counties. The Judicial Council ordered the five actions coordinated in the Santa Clara County Superior Court.

[5] Woods Irrigation Company was also a party to the petition filed by WSID, CDWA, and SDWA, but it is not a party to this appeal.

4

The court granted "a temporary restraining order and an order to show cause as to why a preliminary injunction should not issue requiring the Board to issue a revised letter/notice that is informational in nature." The court found that the curtailment notices were "coercive in nature," they would cause irreparable harm, and the districts were likely to prevail on the merits. The court reasoned that the language of the notices expressed that the Board had already determined without a hearing that these districts were no longer permitted to divert water, which violated their due process rights.

On July 15, 2015, the Board issued a "partial rescission" and "clarification" of the April, May, and June 2015 notices. The partial rescission and clarification told the recipients, including the Districts, that the Board was "rescind[ing] the 'curtailment' portions of the unavailability notices you received. To the extent that [those] notices . . . contain language that may be construed as an order requiring you to stop diversions under your affected water right, that language is hereby rescinded." It also stated: "information available to the State Water Board continues to indicate that there is insufficient water available for the categories of junior water users identified in the State Water Board's prior correspondence, identified above. . . . [¶] Diversion is always subject to water availability limitations, and diversions under your affected water right may be subject to enforcement should the State Water Board find such diversions are or were unauthorized. The State Water Board is continuing its drought-year inspections to determine whether diverters are using water to which they are not entitled. [¶] Those who are found to be diverting water beyond what is legally available to them may be subject to administrative penalties, cease and desist orders, or prosecution in court." On July 30, 2015, the court discharged the order to show cause after it found that the Board's July 2015 partial rescission and clarification complied with its order. The Board began lifting the curtailment notices in September 2015 and had lifted all of them by November 2015.

5

While the 2015 curtailment notices were still in effect, the Board initiated administrative enforcement proceedings against BBID and WSID alleging unauthorized diversions.  SDWA, CDWA, and SJTA notified the Board that they would appear and participate in the administrative enforcement proceedings, including by presenting expert witness and other testimony and by cross-examining witnesses.

In June 2016, the Board dismissed the administrative enforcement proceedings after an administrative hearing demonstrated that the Board's prosecution team could not satisfy its burden of proof.[6]  Although the Board dismissed the enforcement proceedings, the Board's dismissal order expressly rejected the Districts' claims that the Board lacked jurisdiction over pre-1914 appropriative water right holders under Water Code section 1052, subdivision (a).  After the dismissal of the administrative enforcement proceedings, the Districts filed three additional mandate petitions in court challenging the Board's dismissal order on the ground that the Board lacked jurisdiction over pre-1914 water rights.[7]

The Districts incurred substantial attorney fees, costs, expert witness fees, exhibit expenses, and deposition costs in connection with the administrative enforcement proceedings.  In the administrative proceedings, they asked the Board to award them more than $1.1 million in costs.  The Board rejected this request, concluding that section 1032 did not apply to administrative proceedings, and no other statutory authority provided for an award by the Board of costs incurred in an administrative enforcement proceeding.

---

[6] The Board asserts that the administrative record from the enforcement proceedings is not properly before this court.  Since the enforcement administrative record was before the trial court and was considered by it in ruling on the fees motions and the motions to tax costs, we reject the Board's position.

[7] These 2016 mandate actions were filed in Sacramento County, but they were ultimately coordinated with the 2015 curtailment notice mandate actions that had been coordinated in Santa Clara County.

After the dismissal of the administrative enforcement proceedings, the Districts continued to litigate in court their mandate actions challenging the Board's 2015 curtailment notices. They also filed and litigated mandate actions challenging the Board's 2016 dismissal of the administrative enforcement proceedings. In 2016, SJTA dismissed its takings cause of action.

The Districts' mandate actions challenging the curtailment notices were tried to the trial court in January 2018 in phase 1 of a trial that was originally expected to have three phases. In April 2018, the trial court issued a final statement of decision from phase I in favor of the Districts. The court resolved the jurisdictional issue in the Districts' favor and also concluded that the Board's issuance of the 2015 curtailment notices violated the Districts' due process rights by failing to provide them with predeprivation hearings or any other opportunity to challenge the bases for the notices. The court addressed the due process issue even though it was technically moot as a fundamental issue of broad public interest likely to recur.[8]

BBID and WSID dismissed their takings causes of action (which were to be tried in phase 3) in the summer of 2018. The Districts voluntarily dismissed all of the remaining causes of action that would have been resolved in phase 2 and phase 3, thus obviating the need for a phase 2 or phase 3 trial. In June 2019, the court issued its judgments granting peremptory writs of mandate against the Board. The court dismissed the Districts' three mandate actions challenging the Board's order dismissing the administrative enforcement proceedings.

B. *Costs Memorandums and Motions to Strike or Tax Costs*

Following the trial court's entry of judgment against the Board, CDWA, SDWA, and WSID jointly filed a memorandum of costs seeking $292,177.50 in costs, which included $273,660.83 in expert witness fees. The expert witness fees arose from the

---

[8] The court subsequently decided that its due process decision applied to "all four notices," including the April and May 2015 notices that concerned only post-1914 rights.

sadministrative enforcement proceedings. SJTA filed a memorandum of costs seeking $3,926.60 in deposition costs. These costs, too, arose from the administrative enforcement proceedings.[9] BBID filed a memorandum of costs seeking $862,294.09, which largely consisted of $811,384.32 in expert witness fees. These expert witness fees arose from the administrative enforcement proceedings.

The Board filed motions to strike or tax the costs claimed by the Districts.[10] It asserted that there was no authority for recovery of costs incurred in the administrative enforcement proceedings. The Board also maintained that the expert witness fees and deposition costs were not legally recoverable.

The Districts opposed the Board's motions to strike or tax costs. SJTA claimed that the deposition costs it incurred in the administrative proceedings were recoverable under sections 1032 and 1033.5. BBID, WSID, CDWA, and SDWA argued that their costs in the administrative proceedings were recoverable under sections 1032 and 1095 because the administrative proceedings qualified as an " 'action or proceeding' " under the terms of those statutes.

### C. Attorney Fees Motions

The Districts filed in the trial court three motions for attorney fees under section 1021.5. The amounts sought were based on both the court and administrative proceedings. SJTA sought $607,758, WSID, CDWA, and SDWA sought $962,137.25, and BBID sought $1,957,950.73.

The Board opposed the Districts' attorney fees motions.

---

[9] SJTA does not challenge the trial court's ruling taxing its costs.

[10] Intervenor and respondent State Water Contractors and Department of Water Resources also moved to strike or tax costs on similar grounds and also on the ground that, as intervenors, they could not be liable for costs incurred before their intervention. State Water Contractors notes that the Districts' appeals do not challenge the court's ruling that it is not responsible for their costs, and it argues that fees are not available against it because it is a private entity. As the Districts do not challenge the trial court's ruling that intervenors could not be liable for costs, we do not address this issue further.

8

### D. Trial Court's Order on Fees and Costs

The court issued a lengthy written order in December 2019 addressing the motions for attorney fees and costs. The court acknowledged that it was undisputed that the Districts had prevailed and had enforced an important right affecting the public interest. The court "assume[d]" that the Districts had "conferred a significant benefit" on a large group of people other than themselves as a result of the court proceedings, but not as a result of the administrative proceedings.[11]

The court's attorney fees analysis primarily focused on the financial burden element of section 1021.5. The court recognized that this element would be satisfied if the cost of the litigation placed a burden on the Districts that was "out of proportion" to their "individual stake[s]" in the case. The court viewed the issue as whether the potential financial benefits to the Districts at the time litigation decisions were made was insufficient to justify the litigation in economic terms. The court evaluated the potential financial benefits to the Districts at three different "decision points" in the litigation.

The court described the first decision point as the initiation of the court proceedings in June 2015, prior to the lifting of the curtailment notices. At that point, the court found that the Districts faced "enormous financial penalties" if they failed to comply with the curtailment notices, and "enormous" "economic damage from lost crops," which in BBID's case alone would have exceeded "$65 million," if they complied with the curtailment notices. The court found that these financial incentives dwarfed the attorney fees that the Districts ultimately devoted to the litigation. "Thus, it is clear that the petitioners had ample financial incentive to file the five original actions herein, far outweighing the attorney fees they request now."

The court identified the second decision point as the Districts' opposition to the enforcement actions that were initiated in July 2015. The court recognized that fees

---

[11] The court characterized the Districts as "major stakeholders in the Delta."

incurred in administrative proceedings were recoverable under section 1021.5 if " ' "useful and necessary" ' " to the court litigation. The court found that the enforcement actions sought $10,000 per day in fines against WSID and $1.5 million in penalties against BBID. Because the enforcement actions were intended to establish a " 'precedent,' " the court found that all of the Districts, not just BBID and WSID, had a financial incentive to oppose the enforcement actions and that the burden they bore was not out of proportion to their personal stake in the litigation.

The court described the third decision point as the Board's dismissal of the enforcement proceedings in June 2016, after the curtailment notices had been lifted. At this point, the Districts continued the existing court litigation and also filed the mandate actions challenging the Board's dismissal order. The court noted that, at this point, the Districts were still pursuing takings claims against the Board and seeking large amounts of damages. The final takings claims were not dismissed until 2018. While the court found that the Districts' financial incentives were reduced after the dismissal of the enforcement actions, it nevertheless concluded that the Districts had failed to establish that their financial incentives were inadequate to justify their continued pursuit of the litigation.

On the general issue of financial incentives, the trial court observed, "Petitioners have failed to present evidence on this issue, and the evidence available suggests that they and their constituents still have enormous financial incentives to defend their water rights with an eye to future droughts. The Court cannot ignore that a decision making it harder for [the Board] to curtail petitioners' water rights increases the value of those water rights and dependent economic interests—including agricultural interests worth many millions of dollars." The court concluded that the Districts had failed to satisfy their burden of demonstrating that the cost of the litigation exceeded their personal financial stakes in it, as required to recover attorney fees under section 1021.5.

10

The court then turned to the Board's motions to strike or tax costs. The main point of contention was whether the Districts were entitled to recover costs incurred in the administrative enforcement proceedings. The Districts premised their claims to those costs on sections 1032 and 1095. The parties agreed that an award of costs was discretionary under both sections. The court found that the Districts were the prevailing parties in the curtailment notice mandate actions. The court noted that most of the claimed costs were expert witness fees, "which are an impermissible category of costs under section 1032." (See § 1033.5, subd. (b)(1).) The court ruled that sections 1032 and 1095 categorically did not apply to costs incurred in administrative proceedings. But it also ruled, on fairness grounds, that it "would not exercise its discretion to award petitioners costs incurred in the administrative proceedings even if [] the statutes authorized it to do so." The court awarded the Districts their "ordinary costs" in the court proceedings.[12] The Districts timely filed notices of appeal from the court's fees and costs order.[13]

## II. DISCUSSION

As described above, we have before us three separate appeals—one brought by BBID, one brought by SJTA, and a joint appeal by CDWA and SDWA. All three appeals challenge the trial court's denial of the Districts' requests for attorney fees under section 1021.5. In addition, BBID and CDWA/SDWA challenge the trial court's partial grant of the Board's motions to tax costs. We begin with the trial court's order on attorney fees, which centers on its application of section 1021.5.

---

[12] SJTA's costs memorandum was struck entirely. The costs memorandum filed by WSID, CDWA, and SDWA was taxed as to all costs except $241.08 in filing and motion fees. BBID's costs memorandum was taxed as to all costs except $12,964.75 in costs arising in the curtailment notice mandate action.

[13] SJTA has requested that we take judicial notice of a document on the Board's website from 2021. The challenged fees and costs order is from 2019. As this document was not before the trial court when it issued the challenged order, we deny the request.

11

*A. Attorney Fees Under Section 1021.5 for the Court Litigation*

" 'Section 1021.5 codifies the 'private attorney general' doctrine of attorneys fees articulated in *Serrano v. Priest* (1977) 20 Cal.3d 25 . . . and other judicial decisions.' " (*Broad Beach Geologic Hazard Abatement Dist. v. 31506 Victoria Point LLC* (2022) 81 Cal.App.5th 1068, 1095.) Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)

The trial court's denial of the Districts' attorney fees motions for the court litigation turned entirely on the second element, which addresses financial burden. "In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.] [¶] . . . 'The trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves . . . . Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome. . . . [¶] 'After approximating the estimated

12

value of the case at the time the vital litigation decisions were being made, the court must then turn to the costs of the litigation—the legal fees, deposition costs, expert witness fees, etc., which may have been required to bring the case to fruition. . . . [¶] The final step is to place the estimated value of the case beside the actual cost and make the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' [Citation.] [¶] . . . 'As the statute makes clear, subdivision (b) of section 1021.5 focuses not on plaintiffs' abstract personal stake, but on *the financial incentives and burdens* related to bringing suit. Indeed, in the absence of some concrete personal interest in the issue being litigated, the putative plaintiff would lack standing to bring an action.' [Citation.] [¶] . . . [¶] . . . As a logical matter, a strong nonfinancial motivation does not change or alleviate the 'financial burden' that a litigant bears. Only offsetting pecuniary gains can do that." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1215–1217 (*Whitley*).)

Section 1021.5 did not always permit a public entity to seek recovery of its attorney fees from another public entity. In 1993, the Legislature amended section 1021.5 to include public entities within its purview. "[T]he Legislature essentially recognized that sometimes there may be a need for one public entity to engage in public interest litigation against another public entity under circumstances that make a fee award under section 1021.5 appropriate. . . . [T]he amendment was aimed (at least in part) at 'enabl[ing] small public entities to resist large, well-financed public entities, who, in the absence of [the amendment], [would] simply bludgeon the former into legal submission.' [Citation.] Thus, in the wake of the 1993 amendment, there may be circumstances in which it is proper to pay a 'bounty' under section 1021.5 to encourage public entities to pursue public interest litigation against other public entities." (*State Water Resources Control Bd. Cases* (2008) 161 Cal.App.4th 304, 314.)

13

The California Supreme Court's seminal opinion in *Whitley* made two points germane to our analysis here.  First, the court explained that " '[a] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Whitley*, *supra*, 50 Cal.4th at p. 1216.)  Second, it established that "[o]nly offsetting pecuniary gains" "change or alleviate the 'financial burden' that a litigant bears." (*Id.* at p. 1217.)

That is not to say that the absence of a monetary award as a result of the litigation means that a litigant is automatically entitled to recover its fees.  "[T]he absence of a monetary award, or of precise amounts attached to financial incentives, does not prevent a court from determining whether the plaintiff's financial burden in pursuing the lawsuit is ' " 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] The trial court is not required to (and indeed may not) take financial incentives out of the calculation, or conclude there are none, simply because the plaintiff sought [or obtained] no monetary award in the litigation." (*Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 193.)

## 1. Standard of Review

Our standard of review is well established.  " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.  However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)  " '[R]eversal is appropriate "where no reasonable basis for the action is shown." ' " (*Baggett v. Gates* (1982) 32 Cal.3d 128, 143 (*Baggett*).)

"If the court applied incorrect legal standards, its denial order 'necessarily [fell] outside the scope of [its] discretion' and must be vacated." (*Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 763.)  "In reviewing the ruling, ' "we must pay

14

' "particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision." ' " [Citation.] "The pertinent question is whether the grounds given by the court . . . are consistent with the substantive law of . . . section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." ' [Citation.] 'The trial court's determination may not be disturbed on appeal absent a showing that there is no reasonable basis in the record for the award.' " (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 58 (*Children*).)

### 2. The Trial Court's Financial Burden Findings

Our standard of review requires us to scrutinize the trial court's stated reasons to determine whether they are consistent with the legal standards governing section 1021.5 fees and whether a reasonable basis supports those reasons.

The trial court's order analyzed the financial burden element at three different points in time when the Districts made critical litigation decisions. At the first decision point, when the Districts filed the curtailment notice mandate petitions in June 2015, the court found that the Districts faced "enormous financial penalties" if they failed to comply with the curtailment notices, and "enormous" "economic damage from lost crops" if they complied with the curtailment notices. At the second decision point, after the curtailment notices were lifted in the fall of 2015, the court found that the Districts' financial incentives continued because the administrative enforcement actions sought large fines and penalties against WSID and BBID, and were intended to be precedential, which, in the court's view, gave all of the Districts a strong financial incentive to oppose the enforcement actions. At the final decision point, after the dismissal of the administrative enforcement proceedings, the trial court found that the Districts' financial incentives were reduced, but it concluded that because the Districts still had takings causes of action against the Board seeking large amounts of damages, the Districts'

15

financial incentives exceeded the burden of their attorney fees. The court found that the Districts had "failed to present evidence on this issue" and had "enormous financial incentives to defend their water rights with an eye to future droughts" because "a decision making it harder for [the Board] to curtail [the Districts'] water rights increases the value of those water rights and dependent economic interests—including agricultural interests worth many millions of dollars."

### 3. Additional Background

Because the trial court's ruling on attorney fees rested in part on its conclusion that the value of the land owned by landowners in the Districts increased as a result of the court litigation, we consider the legal status of the Districts themselves. "Under California law, an irrigation district is a public corporation governed by a board of directors, usually elected by voters in the district. It is empowered to distribute and otherwise administer water for the beneficial use of its inhabitants and to levy assessments upon the lands served for the payment of its expenses." (*Bryant v. Yellen* (1980) 447 U.S. 352, 356, fn. 1; see also Wat. Code, §§ 22280, 25650.) Irrigation districts are "state agencies formed and existing for governmental purposes." (Wat. Code, § 20570.) They are responsible for allocating water among the landowners in their districts when there is an inadequate supply. (Wat. Code, § 22252.3.)

### 4. Analysis

The Districts' victory in the curtailment notice mandate actions plainly "resulted in the enforcement of an important right affecting the public interest" and conferred "a significant benefit . . . on the general public or a large class of persons," and the trial court did not find otherwise. (§ 1021.5.) The trial court's denial of the Districts' fees motions for the court litigation rested solely on its finding that the Districts had failed to satisfy section 1021.5's financial burden element. That element is satisfied if "the necessity and financial burden of . . . enforcement by one public entity against another public entity, are such as to make the award appropriate." (*Ibid.*)

16

The trial court's order identified the following as the bases for its finding that the Districts had "enormous financial incentives" to pursue the court litigation: (1) the fines and penalties that the Districts faced if they violated the curtailment notices between the issuance of the notices in June 2015 and the lifting of the notices in the fall of 2015; (2) the economic damage from crop losses that the landowners in the Districts faced if the District complied with the curtailment notices during that period; (3) the fines and penalties that the Board sought in its administrative enforcement proceedings against BBID and WSID, which the court found provided a financial incentive for all of the Districts because the administrative enforcement proceedings were intended to be precedential; (4) the Districts' takings causes of action, which sought damages from the Board; (5) the value of the Districts' water rights, which the court found would be increased by the Districts' victory because that victory made it more difficult for the Board to curtail their rights; and (6) the value of "agricultural interests" of the landowners in the Districts, which the court found would be more valuable as a result of the Districts' victory.

We bear in mind that "[o]nly offsetting pecuniary gains" can "change or alleviate the 'financial burden' that a litigant bears." (*Whitley*, *supra*, 50 Cal.4th at p. 1217.) A trial court's denial of fees cannot be upheld on appeal if there is "no reasonable basis" for the trial court's ruling. (*Baggett*, *supra*, 32 Cal.3d at p. 143.) In *Baggett*, the California Supreme Court reversed the trial court's denial of section 1021.5 fees, finding that there was "no reasonable basis" for the trial court's ruling, because the plaintiffs had "secured the enforcement of basic procedural rights" that "may well not result in any pecuniary benefit to plaintiffs themselves." (*Id.* at p. 143.)

As in *Baggett*, we cannot identify any pecuniary benefit that flowed to the Districts from the court litigation here. That litigation resulted in the trial court's finding that the Board had violated water right holders' right to due process and lacked jurisdiction under Water Code section 1052, subdivision (a) to issue the curtailment

17

notices. However, this victory did not preclude the Board from exercising jurisdiction under any authority other than Water Code section 1052, subdivision (a), or curtailing the Districts' diversions after providing due process.

The Board, citing the trial court's findings, claims that the Districts accrued identifiable pecuniary gains from their victory. We disagree. The trial court's findings did not identify any direct pecuniary gains realized by the Districts as a result of their court victory that could offset the burden of their signficant attorney fees.

We recognize that the Districts had an incentive to obtain a definitive ruling on the validity of the curtailment notices while the notices were in effect. If the Districts obeyed the notices, the landowners in their districts would suffer extreme hardship, including crop losses, economic damage, and the loss of drinking water, but if the Districts violated the notices the Districts would suffer fines and penalties. If the court invalidated the notices, the Districts would be relieved of this harsh choice. Nevertheless, due to the timing of the court litigation, this incentive did not offer the Districts the prospect of any direct pecuniary gain that could offset the burden of their attorney fees in the court litigation.

The only significant part of the court litigation that occurred before the curtailment notices were lifted was the filing of the curtailment notice mandate actions themselves and the initial court proceedings that led to the partial rescission and clarification of the curtailment notices shortly after they issued. Thus, at the time of the bulk of the court litigation, the Districts did not face any potential fines hinging on the validity of the curtailment notices.

We also discern no reasonable basis for the court's finding that the fines and penalties that the Board sought in its administrative enforcement proceedings against BBID and WSID offset the burden of the Districts' attorney fees in the court litigation. The Districts' victory in the court litigation had no impact on the administrative enforcement proceedings, which were dismissed on grounds unrelated to the due process

18

and jurisdictional issues upon which the Districts prevailed in court. Further, the court litigation was tried in 2018, but the administrative proceedings were dismissed in 2016. Thus, the administrative proceedings were dismissed long before the bulk of the court litigation even took place. Accordingly, the threat of fines and penalties BBID and WSID faced in the administrative enforcement proceedings did not offer the Districts a pecuniary incentive that might offset the burden of their attorney fees in the court litigation that took place when they faced no fines or penalties.

We do not agree with the trial court's conclusion that the mere existence of takings causes of action brought by some of the Districts gave the Districts a financial incentive to litigate the due process and jurisdictional issues in the court proceedings. The takings causes of action were bifurcated for trial in phase 3, which never took place, and were dismissed after phase 1. The Districts never litigated the takings causes of action and did not seek to recover any fees associated with those causes of action, and upon which they did not prevail. Unlitigated causes of action for which no fees were sought could not have provided a pecuniary incentive that offset the burden of fees incurred for litigation of other causes of action upon which the Districts prevailed.

The trial court's conclusion that the value of the Districts' water rights and the "agricultural interests" of the landowners within the Districts were increased by the Districts' victory, thereby resulting in a pecuniary gain for the Districts, lacked a reasonable basis. As the California Supreme Court described in *Whitley*, in assessing the benefits under section 1021.5, "the trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the *successful litigants themselves*." (*Whitley*, *supra*, 50 Cal.4th at p. 1215, italics added.) The Districts, which are governmental entities, did not "enjoy[] any direct pecuniary benefit from the litigation." (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 739 (*Keep Our Mountains Quiet*).)

19

Further, any future pecuniary gains to the Districts' landowners were speculative. Neither the Districts nor the landowners within the Districts enjoyed a direct financial benefit from the court litigation. During the bulk of the litigation, the curtailment notices had been lifted, and the Board remained free to pursue future water curtailments on a number of legal theories.

The financial burden element is intended to balance the burden imposed by fees against the litigant's gains from the successful litigation. Where there are no gains but only the possibility that future detriment might be mitigated, the litigant has not achieved any gain that may offset fees. As this court held in *Keep Our Mountains Quiet*, where the only evidence of a possible pecuniary interest is of an indirect, speculative, potential future benefit, such a possible interest is not the type of pecuniary benefit that may offset the financial burden of fees and that disqualifies a litigant from recovering fees under section 1021.5. (*Keep Our Mountains Quiet*, *supra*, 236 Cal.App.4th at pp. 739–740; see also *Heron Bay Homeowners Assn. v. City of San Leandro* (2018) 19 Cal.App.5th 376, 392–395.)

In short, the Districts' victory, requiring the Board to act within its jurisdiction and to accord water right holders due process, merely protected the existing value of the Districts' water rights and the interests of the landowners within the Districts. The Districts did not thereby obtain any pecuniary gain that they could utilize to offset the burden of their attorney fees.

We do not disregard the fact that the Districts, as the moving parties, bore the burden of demonstrating that the financial burden of their attorney fees was not offset by their pecuniary gains. (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 113.) However, this is not a case in which the Districts failed to marshal evidence of the financial burden of their fees or of their lack of any pecuniary gain. The evidence was essentially undisputed. The Districts bore millions of dollars in attorney

20

fees but realized no direct pecuniary gain as a result of their victory on due process and jurisdictional grounds.

The cases relied on by the Board to support both its arguments and the trial court's order do not undermine our conclusion that the trial court abused its discretion in denying attorney fees here.

*City of Maywood v. Los Angeles Unified School Dist.* (2012) 208 Cal.App.4th 362 does not establish that avoiding harm to the economic interests of the landowners in the Districts provided the Districts with pecuniary gains that offset their attorney fees. In *Maywood*, the Second District Court of Appeal concluded that "when applying section 1021.5's 'financial burden' criterion to political subdivisions, the trial court should consider whether the burden of the litigation transcended the interests of both the political entity and the collective interests of the individuals that the entity represents." (*Id*. at p. 435.) "[W]hen assessing this factor in the context of a public entity's legal victory, the trial court may only consider the public entity's pecuniary interests and the pecuniary interests of its constituents." (*Ibid.*) The Second District Court of Appeal did not actually decide in *Maywood* whether the city was entitled to its fees, because it concluded that the trial court had improperly denied fees based on considerations that were not limited to the city's pecuniary interests. (*Id.* at p. 435.) The Court of Appeal in *Maywood* held that the Supreme Court's analysis of section 1021.5 in *Whitley* applied to public enforcement actions. (*Id*. at p. 432.) The decision does not stand for the proposition here that the landowners' individual interests should be equated to those of the Districts.

As the Districts point out, the landowners in their districts did not secure any direct pecuniary gain from the court's ruling that due process and jurisdictional limits must be observed, since neither ruling prevented the Board from curtailing water diversions on other grounds. Furthermore, while irrigation districts may act in the interests of the landowners in their districts, we do not consider these landowners to be

21

akin to a city's "constituents." Unlike a city, an irrigation district is a public entity charged with the responsibility of allocating water among the landowners in its district for beneficial uses. (See *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 256–260 (*Abatti*).)

In *Millview County Water Dist. v. State Water Resources Control Bd.* (2016) 4 Cal.App.5th 759, the water district itself had undisputed direct pecuniary interests that offset its financial burden because its victory in the litigation allowed it to retain an asset worth $2.1 million for which it had paid only $500,000 and provided it with a future source of " 'free' water." (*Id*. at p. 770.) Nothing similar is true here. The Districts' victory merely secured their due process rights and limited the Board to acting within its jurisdiction. The Districts realized no direct pecuniary gains; nor did the court litigation carry the potential of pecuniary gains for them.

In *Young v. State Water Resources Control Bd.* (2013) 219 Cal.App.4th 397, the Third District Court of Appeal found that a water district's *customers*, farmers who had prevailed on a due process claim that served their "personal financial interests," were not entitled to recover their fees under section 1021.5 because the benefits were only to them, not to "the public generally." (*Id*. at p. 407.) The Third District acknowledged that had the customers prevailed on a jurisdictional issue, "there might have been grounds for an award of fees," but they had not. (*Ibid.*) Here, the Districts received no "personal financial benefits," such as those secured by the prevailing parties in *Young*. (*Ibid.*)

In *Children*, *supra*, 228 Cal.App.4th 45, several county commissions successfully obtained the invalidation of a state statute that would have required the local commissions to remit more than $30 million from their local funds to a statewide trust fund.[14] (*Id*. at pp. 50–53.) The commissions sought to recover their attorney fees, which

_____

[14] The parties dispute whether the fact that the victory benefitted others should, by itself, entitle a public entity to recover its fees. The Districts claim that the burden on them was disproportionate because many other water right holders also benefitted from

22

were less than $1 million, under section 1021.5. They conceded that their victory meant that they would retain many millions in funds, but they maintained that they had satisfied the financial burden element because the retained funds would be held in trust for the benefit of their constituents. (*Id.* at pp. 52–53.) The trial court found that they had not satisfied the financial burden element because "the Trust Fund money they preserved far exceeded the fees incurred and therefore the bounty of a fee award was not required to encourage the litigation." (*Id.* at p. 58.) The Fifth District Court of Appeal agreed with the trial court. "In bringing suit, the Commissions were protecting their sole source of funding, without which they would not exist. The trial court reasonably could conclude that, in a situation where the Commissions stood to preserve for their constituents funds that greatly exceeded the attorney fees expended, they did not deserve a reward for pursuing litigation that coincidentally conferred statewide benefits." (*Id.* at p. 60.)

*Children* is readily distinguishable. In *Children*, the commissions' victory secured the commissions' rights to over $30 million in funds at a cost of less than $1 million in fees. The pecuniary benefit of this victory provided a reasonable basis for the trial court's finding that the commissions did not "deserve a reward" for pursuing the litigation. (*Children*, *supra*, 228 Cal.App.4th at p. 60.) Here, on the other hand, the Districts' victory did not secure any pecuniary gain for the Districts. Moreover, the Districts' responsibilities extend beyond its landowners: "[L]andowner water rights are subordinate to district purposes." (*Abatti*, *supra*, 52 Cal.App.5th at p. 259; see also *id*. at p. 260 [rejecting the contention that "the District's purpose is to enable landowners to

their victory. This claim misconstrues the nature of the appropriate inquiry. The financial burden assessment, unlike some of the other section 1021.5 elements, does not turn on whether others (even many others) benefitted from the Districts' victory but only on whether the Districts' fees burden was disproportionate to the Districts' offsetting pecuniary benefits. The fact that others also benefitted from the Districts' victory plays no role in the weighing of the burden of the Districts' fees against the District's pecuniary gains.

23

irrigate" and observing "the District's purposes and powers extend beyond irrigation . . . it is obligated to provide equitable service to all beneficial users"].)

The Board claims that *California Licensed Foresters Assn. v. State Bd. of Forestry* (1994) 30 Cal.App.4th 562 (*CLFA*) supports the trial court's ruling in this case. We disagree.  In *CLFA*, the association, whose 700 members were licensed foresters, successfully challenged emergency regulations that would have put licensed foresters out of business, and the association then successfully obtained a ruling from the trial court that it could recover under section 1021.5 about $43,000 that it had expended on attorney fees.  (*CLFA*, at pp. 568–571 & p. 569, fn. 7.)  The trial court's fees ruling was overturned by the Third District Court of Appeal because the pecuniary stake of the association's members established that the association's fees would not impose an inappropriate financial burden on the association.  (*Id.* at pp. 571–572.)  *CLFA* is not on point here.  The Districts obtained no pecuniary gain for themselves or any of their "constituents," as their victory merely ensured that the Board would provide due process and act within its jurisdiction.  That victory did not secure any pecuniary benefit for the Districts that could offset the financial burden of their attorney fees.

The Board also cites *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, disapproved on an unrelated point in *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 516, footnote 17, in support of the trial court's ruling.  In *Howell*, the trial court had awarded millions of dollars in section 1021.5 fees to the defendants.  (*Id.* at pp. 198–199.)  The Third District Court of Appeal reversed the trial court on the ground that the trial court failed to compare the financial burden of the fees to the "exposure defendants faced in the litigation," which exceeded $8 million.  (*Id.* at p. 202.)  The Third District held that "the financial exposure defendants faced was decidedly not out of proportion with the financial burden they incurred in defending the action," so they were not entitled to recover fees under section 1021.5.  (*Ibid.*)  *Howell* is not on point.  The Districts were not

24

*defendants* in a lawsuit in which they faced the possibility of a large damages verdict against them. Instead, they were petitioners in a mandate action in which they sought procedural protections against unlawful actions by the Board. Their victory did not shield them from a large damages award, and they obtained no pecuniary gain that could offset the very substantial attorney fees that they incurred to obtain that victory.

We decide that the trial court erred in its legal analysis of the financial burden element in concluding that the Districts had failed to establish that the financial burden of their fees was disproportionate to their pecuniary interest in the litigation. We therefore determine the trial court abused its discretion, and its order must be reversed. As the evidence on the financial burden element was largely undisputed, we will direct the trial court on remand to award the Districts under section 1021.5 the attorney fees that they incurred for the court litigation.[15]

### B. Attorney Fees For the Administrative Proceedings

The Districts contend that the trial court also erred in failing to award them the attorney fees they incurred in the administrative enforcement proceedings. The Board, on the other hand, argues that the trial court properly denied the Districts recovery of fees they incurred in the administrative enforcement proceedings because the administrative enforcement proceedings were "not necessary or useful" to the court's resolution of the court action.

---

[15] The Board contends that the Districts "did not segregate their fees incurred in the litigation before the superior court from those incurred in the administrative [enforcement] proceedings." However, in their fees motions, the Districts itemized fees and costs by task and date range, which provides the court the necessary information to allocate fees and costs between the court litigation and the administrative enforcement proceedings.

1. <u>Legal Principles</u>

California cases have established the standards for recovery of section 1021.5 attorney fees for services provided in proceedings separate from the court litigation in which the party prevailed.

In *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836 (*Wallace*), the cooperative decided to challenge the validity of minimum milk retail price regulations by selling milk at a lower price. (*Id.* at p. 841.) The state obtained a temporary restraining order and a preliminary injunction against the cooperative barring it from violating the regulations. (*Ibid.*) The cooperative then filed a cross-complaint challenging the validity of the regulations. (*Ibid.*) The state filed a complaint against the cooperative seeking civil penalties. (*Ibid.*) Before any of these actions could be tried, the parties entered into an agreement. (*Ibid.*) Under this agreement, if the state commenced administrative proceedings and suspended the minimum price regulations within a specified period, the parties would dismiss their actions. (*Id.* at pp. 841–842.) The state held administrative proceedings resulting in the suspension of the minimum price regulations. (*Id.* at p. 842.) The cooperative then sought and obtained its attorney fees under section 1021.5, including the fees it had incurred in the administrative proceedings. (*Ibid.*)

On appeal, the state unsuccessfully challenged the award of fees for the administrative proceedings. (*Wallace*, *supra*, 170 Cal.App.3d at p. 847.) The First District Court of Appeal observed that "[w]hen computing the time expended, the court should ordinarily consider only time reasonably spent on the merits of the action, and should not include peripheral activities *unless* they may be shown to have contributed to the result reached." (*Ibid.*) It looked to federal cases for guidance and noted that "[u]nder federal law, the hours reasonably expended on an action may include services performed in closely related administrative proceedings." (*Ibid.*) The First District reasoned that the trial court's award was proper because the administrative proceedings

26

were " 'intertwined inextricably' " (*id.* at p. 848) with the court proceedings and "the legal services performed in those proceedings were both useful and necessary to the ultimate resolution of the action, and directly contributed to that resolution." (*Id.* at pp. 848–849.)

In *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448 (*Best*), the Fourth District Court of Appeal adopted the First District's reasoning in *Wallace*. Best had brought a mandate action to overturn the result of administrative proceedings. (*Id.* at p. 1454.) Best ultimately prevailed, and a writ issued directing an administrative decision in Best's favor. (*Ibid.*) Best sought attorney fees under section 1021.5 for the fees he had incurred in the administrative proceedings. (*Ibid.*) The trial court denied him fees for the administrative proceedings, and Best appealed. (*Ibid.*) The Fourth District reversed and held that "the appropriate inquiry to determine whether attorney's fees should be awarded by a court for services provided during administrative proceedings is whether they were useful and of a type ordinarily necessary to the vindication of the public interest litigated by the private party." (*Id.* at p. 1459.) "[T]he fact the vindication of the public interest was sought beginning in an administrative rather than judicial forum, should not be allowed to frustrate the legislative intent of encouraging public interest litigation." (*Id.* at p. 1461, fn. omitted.) "Since the administrative proceedings here were the first step in the litigation leading to the mandamus proceeding (§ 1094.5), by their very nature they were useful and of a type ordinarily necessary to the public interest litigation." (*Ibid.*) "[W]hether administrative proceedings precede [as in *Best*] or follow [as in *Wallace*] a court action, is a distinction without a difference, since the order alone does not make the proceedings any less intertwined, useful and of a type ordinarily necessary to the court action." (*Id.* at p. 1462.)

The standards set forth in *Wallace* and *Best* have not been limited to administrative proceedings. In *Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740 (*Children's*), the plaintiffs had filed both federal court and state court

actions. (*Id.* at pp. 750, 752.) The federal litigation, which turned on the applicability of a federal statute, sought only declaratory and injunctive relief. (*Id.* at p. 750.) The state court action sought damages, a remedy that was not available in the federal action. (*Id.* at pp. 752–753.) However, the legal issues were inextricably intertwined, and the trial court in the state court action relied on several of the federal court's findings to support its ruling. (*Id.* at p. 778.) After the plaintiffs prevailed in the state court action, that court awarded them attorney fees under section 1021.5, which included a substantial amount of fees attributable to the federal action. (*Id.* at pp. 756, 775.)

In the *Children's* appeal, the First District examined whether the trial court had erred in awarding fees incurred in the federal proceedings. (*Children's*, *supra*, 97 Cal.App.4th at pp. 775, 777–778.) The First District held that fees for a "collateral action" (*id.* at p. 779) could be awarded under section 1021.5 even if the collateral action "may not have been absolutely necessary to the action in which fees are awarded but was nonetheless closely related to the action in which fees are sought and useful to its resolution." (*Id.* at p. 780.) Because the federal action "related very directly to the issues presented in the action in which fees were awarded," even though "the federal proceedings may not have been a necessary precondition of the superior court action, they materially contributed to the resolution of the constitutional issues presented to that court. The federal rulings not only relieved the superior court of burdensome adjudicative responsibilities it would otherwise have had to undertake but also diminished the work required of counsel." (*Id*. at p. 781.)

### 2. The Trial Court's Findings

The trial court made several findings in support of its decision denying the Districts recovery of the attorney fees they had incurred in the administrative enforcement proceedings. We may uphold the trial court's decision on any of these grounds. (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 625.) We therefore limit our review to the trial court's finding that

28

the Districts could not recover the fees they incurred in the administrative enforcement proceedings because they had failed to demonstrate that their opposition to the enforcement proceedings was " ' "useful and necessary" ' " to the court litigation. Specifically, the court found that the administrative proceedings were not "a prerequisite" to the court litigation and primarily concerned the water methodology issue, which was unrelated to the due process and jurisdictional issues upon which the Districts prevailed in the court litigation.[16]

### 3. Analysis

The Districts have not persuaded us that the trial court abused its discretion in finding that they were not entitled to recover their fees incurred in the administrative enforcement proceedings because they failed to establish that the administrative proceedings were useful and necessary to the trial court's resolution of the court litigation.

Section 1021.5 fees are available only if the administrative proceedings were " 'intertwined inextricably' " (*Wallace*, *supra*, 170 Cal.App.3d at p. 848) with the court proceedings *and* "the legal services performed in those [administrative] proceedings were both useful and necessary to the ultimate resolution of the [court] action, and directly contributed to that resolution." (*Id*. at pp. 848–849.) "[T]he appropriate inquiry to determine whether attorney's fees should be awarded by a court for services provided during administrative proceedings is whether they were useful and of a type ordinarily necessary to the vindication of the public interest litigated by the private party." (*Best*, *supra*, 193 Cal.App.3d at p. 1459.) While the administrative proceedings need not have

---

[16] The court also found that the Districts "had a strong financial motivation to contest the[] [administrative] enforcement proceedings" and that their opposition to the administrative enforcement proceedings did not provide a " 'significant benefit' to others" because the administrative proceedings ultimately resolved only the validity of the Board's "water availability methodology" with respect to the Delta. Because we uphold the trial court's order on a different ground, we do not address the validity of these findings.

been "absolutely necessary to the action in which fees are awarded," the administrative proceedings must have been "closely related to the action in which fees are sought and useful to its resolution." (*Children's*, *supra*, 97 Cal.App.4th at p. 780.)

We accept that the administrative enforcement proceedings were *related to* the court litigation. Yet we perceive no abuse of discretion in the trial court's determination that the legal services performed for the Districts in the administrative enforcement proceedings were not inextricably intertwined with the court litigation and were neither useful nor necessary to the trial court's resolution of the court litigation.

The court litigation that led to the Districts' victory involved due process and jurisdictional challenges to the validity of the curtailment notices issued to the Districts and to many others. The administrative enforcement proceedings concerned enforcement of those notices against only BBID and WSID and ultimately resolved only the Districts' challenge to the Board's water availability methodology, which was never addressed or resolved in the court litigation and played no significant role in the court's resolution of the due process and jurisdictional issues. Although the Board also resolved the jurisdictional issue against the Districts, this erroneous legal finding was not useful to the trial court in resolving the court litigation, which reached the opposite conclusion. Since the Board lacked jurisdiction under Water Code section 1052, subdivision (a) as a matter of law to issue the curtailment notices to pre-1914 water right holders, the validity of the Board's specific water availability methodology underlying those notices was immaterial and was neither necessary nor useful to the court's resolution of the court litigation.

The Districts argue that the administrative enforcement proceedings were "necessary" to resolution of the court litigation because the Districts were "compelled to litigate the Enforcement Action before [they] could have [their] day in court." While the timing of the administrative enforcement proceedings meant that those proceedings were resolved before the court litigation terminated, the administrative proceedings were not a necessary precursor to the court litigation, nor was the resolution of the administrative

30

proceedings useful in the resolution of the court litigation. Although BBID and WSID were targets of the Board's administrative enforcement proceedings and undoubtedly had a need to defend themselves in those proceedings, the Districts' victory in the court litigation was essentially unrelated to the resolution of the administrative proceedings because the issues resolved in the separate proceedings were distinct. The decision in the administrative proceedings turned solely on the Board's resolution of the water availability methodology issue, while the court litigation did not consider that issue and resolved only the due process and jurisdictional issues.

The Districts argue that even if the administrative proceedings were not "necessary" to the court litigation, the administrative proceedings were "closely related and useful" to it. The Districts rely heavily on the trial court's denial of a motion to stay the administrative proceedings, but we do not consider the court's denial of the stay motion to be material to the issue of whether the administrative proceedings were useful and necessary to the court litigation. Although the Districts assert that the denial of the stay made their defense in the administrative proceedings "a precondition" for the court litigation, the trial court's denial of the stay motion was consistent with its conclusion that the administrative proceedings were ancillary to the court litigation due to the water methodology issue and could properly proceed on a separate track without regard to the timeline for the court action. Unlike the cases the Districts rely on, this was not a case in which the administrative proceedings were necessary to exhaust administrative remedies or to resolve the court litigation.

The Districts claim that the trial court erroneously relied on the "sequencing" of the administrative proceedings and the court litigation, but we see no improper reliance. The trial court found that the administrative proceedings did not resolve the issues that the court litigation resolved, so they were neither necessary nor useful. The order in which the proceedings occurred was immaterial. The Districts suggest that the trial court improperly relied on the fact that the administrative proceedings involved a large amount

31

of fees expended on the water availability methodology issue. The trial court's determination that the administrative proceedings were not useful or necessary to the court litigation did not turn on the amount of fees expended in the administrative proceedings, so we discern no impropriety.

The Districts maintain that the administrative proceedings and the court litigation were inextricably intertwined because "the issues raised in both proceedings stem from the water availability analysis." However, the legal issues resolved in the court litigation did not depend on the validity of the Board's water availability analysis. Further, we do not agree with the Districts' claim that the administrative proceedings and the court litigation involved "identical issues." The court litigation did not resolve the water availability methodology issue resolved in the administrative proceedings, and the Board's rejection of the jurisdictional issue in the administrative proceedings was neither useful nor necessary to the resolution of that legal issue in the court proceedings.

Finally, the Districts urge that the administrative proceedings played a useful role in the trial court's resolution of the due process issue because the resolution of the administrative proceedings demonstrated the need for a due process hearing. However, we find no basis in the record to disturb the trial court's conclusion that the administrative proceedings were not useful or necessary to its resolution of the court litigation. The trial court was in the best position to assess whether the administrative proceedings played a useful role in its decision making. We defer to its finding that they did not.

We conclude that the trial court did not abuse its discretion in finding that the Districts were not entitled under section 1021.5 to recover the attorney fees they incurred in the administrative enforcement proceedings.

*C. Costs*

BBID and CDWA/SDWA contend that the trial court erred in partially granting the Board's motions to tax their costs. The taxed costs were expert witness fees,

32

deposition costs, and exhibit costs incurred in the administrative enforcement proceedings. No witnesses, depositions, or exhibits were used in the curtailment notice mandate proceedings.

CDWA/SDWA claim that the trial court had discretion under sections 1032 and 1095 to award them the costs they incurred in the administrative enforcement proceedings. BBID contends that the court was mandated to award it the costs it incurred in the administrative enforcement proceedings because it was the prevailing party in the administrative enforcement proceedings.

Section 1032 provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) It defines " '[p]revailing party' " as "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under [s]ection 1034."[17] (*Id.*, subd. (a)(4).)

The trial court determined that CDWA, SDWA, and BBID were the prevailing parties in the curtailment notice mandate actions. This finding did not mandate that the court award to the Districts any costs. Because the Districts did not recover any

---

[17] The Districts do not explain how section 1095 broadens the mandate for costs. Section 1095 provides: "If judgment be given for the applicant, the applicant may recover the damages which the applicant has sustained, as found by the jury, or as may be determined by the court or referee, upon a reference to be ordered, together with costs; and a peremptory mandate must also be awarded without delay. Damages and costs may be enforced in the manner provided for money judgments generally." (§ 1095.) We therefore review whether the trial court erred under section 1032.

"monetary relief" in the mandate actions, the court could designate them as the prevailing parties and "in its discretion, may allow costs or not." (§ 1032, subd. (a)(4).) The court expressly exercised this discretion and denied them the costs they incurred in the administrative enforcement proceedings. It found: "[I]n this case, an award of costs pursuant to either section 1032 or section 1095 is ultimately within the Court's discretion. Here, the Court would not exercise its discretion to award petitioners costs incurred in the administrative proceedings even if [] the statutes authorized it to do so.[18] . . . Under the circumstances, the Court finds it fair and appropriate for [the Districts and the Board] to share the bulk of the costs arising from this dispute, which were incurred during the enforcement proceedings."

CDWA/SDWA argue that the court had discretion to award them the costs they incurred in the administrative proceedings. Since the court expressly exercised its discretion to deny CDWA and SDWA those costs, they may prevail only if they persuade us that the court's "fair and appropriate" rationale was outside the bounds of its broad discretion. As they make no serious attempt to do so, we reject their challenge to the trial court's order taxing their costs.

BBID argues that the court should have found that it was the prevailing party in the administrative enforcement proceedings, which in its view would have entitled it to a mandatory award of costs because those proceedings against it were dismissed. Section 1032 mandates an award of costs to a "a defendant in whose favor a dismissal is entered." (*Id.*, subd. (a)(4).) It defines " '[d]efendant' " as "a person against whom a complaint is filed, or a party who files an answer in intervention." (*Id.*, subd. (a)(2).)

Only WSID and BBID were subjects of administrative enforcement proceedings. WSID was not "a person against whom a complaint is filed" (§ 1032, subd. (a)(2)) in

---

**18** The court also found that sections 1032 and 1095 categorically did not apply to costs incurred in administrative proceedings. We need not consider the validity of this finding.

those proceedings because the enforcement action against WSID was initiated by a draft cease and desist order, not a complaint. BBID was "a person against whom a complaint was filed" (*ibid*.) in the sense that the administrative enforcement proceedings against BBID were initiated by an "administrative civil liability complaint." The administrative civil liability complaint against BBID was dismissed. Nevertheless, the mere fact that the administrative complaint against BBID was dismissed did not entitle BBID to a mandatory award of costs in the curtailment notice mandate action. The costs memorandum filed by BBID that was taxed by the trial court was filed in the curtailment notice mandate action, not in the administrative enforcement proceedings in which the complaint against BBID was dismissed.

BBID's attempt to persuade us that costs incurred in one proceeding must be awarded in a separate proceeding lacks a foundation in authority. BBID contends that because the administrative proceedings were "adjudicative" they fell within the purview of section 1032.[19] It cites *Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312 in support of this contention, but the issue in *Edna Valley* was whether attorney fees incurred in administrative proceedings were recoverable under section 1021.5 in a mandate action challenging an administrative decision that was inextricably intertwined with and necessary and useful to resolution of the mandate action. (*Id.* at p. 1318.) Although the Second District Court of Appeal adopted a broad interpretation of " 'action' " in section 1021.5, the definition of " 'action' " in section 1032 was not at

---

[19] BBID's reliance on *Williams v. Santa Maria Joint Union High Sch. Dist.* (1967) 252 Cal.App.2d 1010 is misplaced. In that case, the court held that the expense of preparing transcripts of a hearing before an administrative agency to defend against a challenge to the administrative decision in a mandate action *in court* was a recoverable expense after the mandate action was unsuccessful. (*Id.* at pp. 1012–1013.) The expenses incurred in *Williams* were record preparation expenses *in the mandate action*. Here, the expenses were not incurred in the mandate action but solely in the administrative enforcement proceedings, and the curtailment notice mandate actions were not challenges to the administrative enforcement proceedings decision.

issue in *Edna Valley*.  (*Ibid.*)  The fees awarded in *Edna Valley* were awarded in the mandate action.  In contrast, here we have already decided that the administrative enforcement proceedings were not inextricably intertwined with or useful and necessary to the mandate actions.

As the Districts did not recover monetary relief, the trial court had discretion to allow or disallow their costs in its discretion under section 1032, subdivision (a)(4).  Its decision to exercise that discretion to deny them those costs is one that we defer to unless it exceeds the bounds of reason.  As BBID and CDWA/SDWA have not persuaded us that the court's exercise of its discretion was unreasonable, we reject their challenges to the court's partial grant of the Board's motions to tax their costs.

### III.  DISPOSITION

The trial court's fees and costs order is reversed, and the trial court is directed to enter a new order granting the Districts their attorney fees under section 1021.5 for the court litigation, denying the Districts their attorney fees for the administrative proceedings, and, as it originally did, partially granting the Board's motions to tax costs.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

36

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P.J.




_____
Wilson, J.




**H047927**
*In re California Water Curtailment Cases*